Smith *v.* Burnet.

STEPHEN O. SMITH, executor, appellant,

*v.*

EMMA L. BURNET, respondent.

1. On exceptions to an executor's account, the executor is not a competent witness, when he offers himself as a witness on his own behalf, to testify as to any transactions between himself and his testator.

2. Where stock stood in a testator's name on the books of the corporation, the facts that the certificate is found in the executor's possession, and that the testator gave him a power of attorney to receive and assign any scrip or dividend due him from the company, are not conclusive evidence of a gift of the stock to the executor.

Appeal from decree of Essex orphans court.

*Mr. J. Frank Fort,* for appellant.

*Mr. George F. Tuttle,* for respondent.

THE ORDINARY.

The question presented and discussed in this appeal is, whether the appellant, who is the surviving executor of his father, has established his title (by gift) to certain insurance company stock which his father owned, and which at his death still stood in his name on the books of the company. The respondent excepted

to the appellant's account as executor, because he had not charged himself with the stock and the dividends thereon, and the orphans court, by order made April 4th, 1881, charged him therewith, and refused to allow him commissions, and ordered him to pay the costs of the exceptions, undoubtedly because they deemed his conduct, in claiming the stock as his individual property, fraudulent. They also, by another order made on the same day, adjudged that he had abused his trust, and failed to perform the duties required of him by law as executor, and revoked his letters testamentary and appointed another person administrator with the will annexed.

The court below refused to permit the appellant to testify as to the transactions between him and the testator in regard to the gift of the stock, or as to any statement of the testator on the subject. The appellant's counsel urges that under the 106th section of the orphans court act, the appellant was admissible as a witness in his own behalf, notwithstanding the prohibition of the third section of the act concerning evidence and the proviso of the supplement of 1880 to that act. The section of the orphans court act referred to provides that the court to whom any account is reported for allowance, or the auditors or masters to whom an account is referred, at the instance of any party interested in the account, or by their own proper authority, may examine the executor, administrator, guardian or trustee exhibiting such account on oath, or affirmation, touching the truth and fairness of the account or any part or item thereof. The 3d section of the act concerning evidence removes the disqualification of persons interested in suits or proceedings at law or in equity, from being witnesses therein, except where the opposite party is prohibited by any legal disability from being sworn as a witness, or either of the parties sue or is sued in a representative capacity, except where as provided in the next section. That section provides that a party to a suit in a representative capacity may be admitted as a witness therein, and if called as a witness in his own behalf, and admitted, the opposite party may, in like manner, be admitted as a witness. The supplement of 1880 (*P. L. of 1880 p. 52*) provides that in all civil actions in any court of law or

Smith *v.* Burnet.

equity of this state, any party thereto may be sworn and examined as a witness, notwithstanding any party thereto may sue or be sued in a representative capacity, provided that the supplement shall not extend so as to permit testimony to be given as to any transaction with or statement by any testator or intestate represented in the suit. The above-mentioned section of the orphans court act did not qualify the fiduciaries therein named to prove their own demands against the estates in their hands (*Pursel* v. *Pursel, 1 McCart. 514, 525*), but it made them compellable to testify if called in reference to their accounts, and made it the duty of the court to require them to testify at the instance of any other party interested in the account. *Davison* v. *Davison, 2 Harr. 169.* In the case in hand, the executor was not called by the court or any party interested in the account within the meaning of the act, but offered himself as a witness in his own behalf; and under those circumstances he was not competent to testify in his own behalf as to any transaction with or statement by the testator.

On the merits of the controversy, as proved by the competent testimony, the decree must be sustained. The proof is, that up to about the 1st of January, 1875, the testator (who lived and died in Newark) owned the stock in question, which was stock of the Newark Mutual Fire Insurance Company. He died on the 6th of March of that year. The stock stood on the books of the company in his name up to the 1st day of April following, when the executor transferred it to himself individually. Louisa B. Riker testifies that before the first of the month of January, 1875, and while the appellant was absent from the state, the testator, taking the scrip out of the box in which he kept it with his other valuable papers, told her that he was going to give that scrip to his son Stephen. She further says that the 1st of January, after Stephen had returned, the testator told her that he had given that scrip to Stephen, and she also says that he told her the same thing, she thinks, more than once before he died, and that he said that Mr. Henry, the secretary of the company, " would see about transferring the stock to Stephen." On the 7th of January, the testator signed and

Smith v. Burnet.

delivered to Stephen a writing by which he appointed Stephen his attorney to receive and assign any scrip or dividends due or belonging to him in the company, and to receive the interest thereon. Stephen did not transfer the stock under this power, but on the day of its date drew, as attorney of the testator, a dividend of $45.45, of which $35.40 were retained by the company for interest due on a mortgage of the testator held by it, and the remainder was paid over to Stephen. The power was such a one as was usual as an authority for merely drawing dividends by an attorney, and under such powers the company would make transfer in case of the known disability of the stockholder from sickness. But in other cases, a different paper was required.

There is no proof that the scrip was ever delivered to Stephen. He swears, indeed, that he had possession of it from the 7th or 8th of January, but that does not prove delivery to him in pursuance of a gift, and he is not competent to prove delivery. The delivery to and acceptance of the scrip by him is a most material part of the transaction. *2 Kent's Com. 438 ; Betts* v. *Francis, 1 Vr. 152.* Louisa B. Riker testifies that she thinks she saw the scrip in the testator's box through January and February, 1875 (he died March 6th, 1875), after he had told her that he had given it to Stephen. The power of attorney before mentioned did not, in terms, authorize Stephen to transfer the stock to himself. It only authorized him, as the testator's attorney, to receive and assign the scrip or any dividends due or belonging to the testator in the company, and to receive the interest thereon. It did not in itself indicate an intention on the part of the testator to give the scrip to Stephen, or to part with the property. Had Stephen under it transferred the stock to himself, he would have been liable to account for it unless he could have shown, *aliunde*, a right to do so for his own benefit. It therefore is not evidence that the testator had given the stock to him. The fact that he did not transfer the stock to himself under it, but drew the dividend as attorney in fact of the testator, and applied part of it to the payment of the testator's debt to the company, is an important and significant circumstance

Wolfe's Case.

also. His claim to the stock, then, rests upon the testimony of Louisa B. Riker, that the testator declared that he intended to give the stock to him, and afterwards, that he had given it to him. This, of itself, is not enough to support the claim of a gift *inter vivos*. For aught that appears, he may have changed his mind before his death. Until delivery and acceptance, there is *locus penitentiæ* in such cases.

And, according to the testimony, notwithstanding these declarations, the testator kept possession of the scrip and never did any act from which the conclusion can be drawn that he in fact delivered it to Stephen, or assigned the stock to him legally or equitably.

The decree appealed from will be affirmed, with costs.